UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MORDECHAI ECKHAUS,

                *Plaintiff*,

-against-

CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER ANDREA LEMMON (Shield No. 7338), and POLICE OFFICERS "JOHN DOES 1-4" in their official and individual capacities,

                *Defendants*.

18-CV-6901 (ARR) (PK)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff, Mordechai Eckhaus, brings this civil rights action against the City of New York, the New York City Police Department ("NYPD"), NYPD Officer Andrea Lemmon, and officers John Doe 1 through 4 (collectively, "defendants"), principally alleging that his constitutional rights were violated when he was arrested by NYPD officers, thrown to the ground, and sprayed with a chemical irritant. Defendants have moved for summary judgment on plaintiff's three federal and five state-law causes of action. For the following reasons, defendants' motion is granted.

## BACKGROUND[1]

On the evening of September 6, 2017, police officers arrived at plaintiff's house following a verbal and physical dispute between plaintiff and his son, Yaakov Eckhaus, during which Yaakov punched his father in the right side of the jaw. Defs.' 56.1 ¶¶ 4–5. The officers responded after Mr. Eckhaus's daughter called 911 and stated that someone was being "beaten" at the residence. *Id.*

---

[1] The background facts, which are viewed in the light most favorable to plaintiff, are drawn from the parties' submissions in connection with the motion for summary judgment, including Defendants' Local Rule 56.1 Statement ("Defs.' 56.1"), ECF No. 72, and Plaintiff's Local Rule 56.1 Counterstatement ("Pl.'s 56.1"), ECF No. 75.

¶ 5.[2] Several NYPD officers, including Andrea Lemmon, responded, as did two emergency medical services ("EMS") paramedics. *Id.* ¶¶ 6–7. After Yaakov refused transportation to a hospital, one of the officers approached and attempted to place him under arrest. *Id.* ¶ 9. The parties' accounts of what happened next diverge.

Defendants claim the incident occurred as follows. Yaakov resisted the officer, causing both of them to fall to the floor. *Id.* ¶ 10. Multiple officers swarmed Yaakov and attempted to restrain him in a violent struggle, during which one of the officers yelled three times that Yaakov was "grabbing his gun." *Id.* ¶¶ 11–12. As the officers tried to subdue Yaakov, Mr. Eckhaus grabbed his son's ankle and tried to pull him away from the officers surrounding him. *Id.* ¶ 14. Officer Lemmon told Mr. Eckhaus to move back, pushed him away, and turned her attention back to handcuffing Yaakov. *Id.* ¶¶ 15–16. Mr. Eckhaus, a paramedic for the Hatzolah ambulance service, then removed a syringe from a pouch on his belt, stated his intention to sedate his son, began walking toward Yaakov, and continued to walk toward him despite warnings to stay away. *Id.* ¶¶ 21–23. After Mr. Eckhaus ignored orders to back off, a lieutenant at the scene then directed non-party Officer Adam El-Maadawy to arrest him. *Id.* ¶ 24.

Mr. Eckhaus offers an alternative account in a few relevant respects. According to him, the officer who initiated the encounter with Yaakov threw Yaakov to the ground. Pl.'s 56.1 ¶ 10. After multiple officers surrounded Yaakov and started fighting and tasering him, Mr. Eckhaus "touched

---

[2] Mr. Eckhaus disputes this fact, and others, by stating that he "lacks sufficient information to form a belief as to the truth of this statement." Pl.'s 56.1 ¶ 5; *see also id.* ¶¶ 7, 39, 41. Other responses do not dispute statements except as to facts plaintiff "does not know." *Id.* ¶¶ 35–36. It is well-settled in this district that Local Rule 56.1 responses denying knowledge or information sufficient to respond to a fact do not specifically controvert that fact. *Walker v. City of New York*, 63 F. Supp. 3d 301, 306 n.4 (E.D.N.Y. 2014). Accordingly, I deem facts met with such a reply to be admitted for the purpose of this motion.

Yaakov's ankle to get his attention" and said, "[d]on't fight." *Id.* ¶ 14. After consulting with EMS, Mr. Eckhaus asked for permission to administer a sedative to Yaakov but did not walk toward him. *Id.* ¶¶ 21, 23. Officer El-Maadawy then arrested Mr. Eckhaus with the assistance of Officer Lemmon. *Id.* ¶¶ 24, 26.

What happened next is essentially undisputed. Mr. Eckhaus was taken from his house by Officer El-Maadawy and another non-party officer. *Id.* ¶ 27. After they reached the stoop in front of the house, a plainclothes male officer ran up and pulled Mr. Eckhaus's legs out from under his body and dragged him down the stairs with the other officers. *Id.* ¶¶ 32–33. The officers then flipped Mr. Eckhaus onto his stomach, applied pressure to his back, and instructed him to present his uncuffed left hand. *Id.* ¶ 34. As Mr. Eckhaus attempted to comply, a plainclothes male officer lifted Mr. Eckhaus's head, pepper sprayed him in the face, and slammed his head into the ground. *Id.* ¶ 35. Officer Lemmon was not outside the house during this portion of the incident, and only saw Mr. Eckhaus again after he was brought to the 71st precinct. *Id.* ¶¶ 37, 39, 41. After Officer Lemmon processed Mr. Eckhaus's arrest paperwork, which lists her as the arresting officer, the arrest was voided and Mr. Eckhaus was released without charges. *Id.* ¶¶ 37, 42–43.

Mr. Eckhaus filed suit in December 2018. His amended complaint brings claims under federal and state causes of action. The federal claims, brought pursuant to 42 U.S.C. § 1983, allege false arrest, use of excessive force, and failure to intervene, all in violation of the Fourth Amendment. Am. Compl. ¶¶ 38–65, ECF No. 20. The state law claims include assault, battery, and intentional and negligent infliction of emotional distress. Am. Compl. ¶¶ 66–88. On December 19, 2022, defendants moved for summary judgment under Federal Rule of Civil Procedure 56. Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 73. Plaintiff opposes defendants' motion. Pl.'s Mem. of L. in Opp'n to Mot. for Summ. J. ("Def.'s Opp'n"), ECF No. 76.

3

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). In deciding this motion, I must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quotation omitted).

The moving party has the burden of demonstrating the absence of a dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant carries its burden, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts[] and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal citations and quotation marks omitted).

**DISCUSSION**

The amended complaint brings eight causes of action against four sets of defendants. At the outset, I grant summary judgment as unopposed on the negligent and intentional infliction of emotional distress claims. *See* Pl.'s Opp'n 1 n.1. I also dismiss certain defendants from the case. First, because the NYPD is a non-suable agency of the City of New York, the NYPD is dismissed from this action. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Second, because

4

John Does 1 through 4 have not been identified in discovery, the claims against them are dismissed without prejudice. *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 294 n.1 (E.D.N.Y. 2018). Finally, I will consider the federal claims only against Officer Lemmon. In *Monell v. Department of Social Services*, the Supreme Court held that a municipality may be found liable under § 1983 only where the municipality itself caused the constitutional violation at issue. 436 U.S. 658, 691 (1978). Here, plaintiff's amended complaint does not include a *Monell* claim, Defs.' 56.1 ¶ 3; Pl.'s 56.1 ¶ 3, so the federal claims are dismissed as to the City of New York, *see Rizk v. City of New York*, 462 F. Supp. 3d 203, 220 n.1 (E.D.N.Y. 2020). As explained below, defendants' motion is granted with respect to Mr. Eckhaus's federal claims, and I dismiss the state-law claims without prejudice to filing in state court.

## I. Summary Judgment is Granted on the False Arrest Claim.

A claim for false arrest under § 1983 "derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). In analyzing false arrest claims, the Second Circuit has "generally looked to the law of the state in which the arrest occurred." *Id.* (quotation omitted). Under New York law, a plaintiff alleging a false arrest claim must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation omitted).

### A. Probable Cause and Qualified Immunity Standards.

Probable cause for an arrest "is an absolute defense to a false arrest claim." *Jaegly*, 439 F.3d at 152. Probable cause exists "when the officers have knowledge or reasonably trustworthy

5

information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quotation omitted). When determining whether probable cause exists, I must "look to the totality of the circumstances" as to what the officers knew at the time of the arrest, considering only "those facts available to the officer at the time of the arrest and immediately before it." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (internal quotation marks omitted).

Officers also enjoy a defense to false arrest claims under the doctrine of qualified immunity. Qualified immunity shields an officer who had *arguable* probable cause to make an arrest. Arguable probable cause exists where "it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met." *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016) (quotation omitted). In other words, an officer is entitled to qualified immunity unless "no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420–21; *but see Jenkins*, 478 F.3d at 87 ("'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").

Because a qualified immunity inquiry requires consideration of the facts of a case, a defendant is entitled to summary judgment on qualified immunity grounds only when "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (quotation and alteration omitted).

### B. Obstructing Governmental Administration Standard.

An assessment of the objective reasonableness of an officer's belief that she had probable cause to arrest the plaintiff requires consideration of the elements of the offense for which he was arrested. *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016). New York law states that:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.

N.Y. Penal Law § 195.05. Broken into elements, an individual may be convicted for obstructing governmental administration when "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017).

### C. Whether There is a Genuine Dispute of Material Fact.

Defendants principally argue that Officer Lemmon is entitled to summary judgment on the false arrest claim for three reasons: first, Officer Lemmon had probable cause to arrest Mr. Eckhaus for obstruction of governmental administration; second, Officer Lemmon never physically apprehended Mr. Eckhaus and thus never seized him; and third, Officer Lemmon is entitled to qualified immunity either because she had at least arguable probable cause to arrest Mr. Eckhaus or because it is not clearly established that an officer can seize an individual for Fourth Amendment purposes merely by filling out an arrest report. Mr. Eckhaus argues that summary judgment is inappropriate because Officer Lemmon did not have probable cause to arrest him, Officer Lemmon assisted with the arrest or ordered or approved it and thus was personally involved, and disputed issues of material fact preclude summary judgment on the issue of qualified immunity. The parties

7

support their arguments principally through citation to deposition testimony and video footage from Officer Lemmon's bodycam, which was knocked to the ground approximately two minutes after the officers initiated their arrest of Yaakov. *See* Defs.' Mot., Ex. F ("Bodycam Video") 3:02–3:06, ECF No. 71-6

Defendants claim that two moments during the incident provided at least arguable probable cause to arrest Mr. Eckhaus for obstructing governmental administration. First, when Mr. Eckhaus grabbed his son's ankle and attempted to pull him from the scrum, and second, when he advanced toward his son while holding a syringe. Plaintiff responds by arguing that the factual disputes surrounding the arrest prevent a probable cause determination on summary judgment because when justifiable inferences are drawn in his favor, it is apparent that Mr. Eckhaus did not intend to prevent the officers from arresting Yaakov but was simply trying to help.

I am unpersuaded by defendants' arguments regarding the portion of the incident in which Mr. Eckhaus offered to sedate his son just prior to his arrest. The dueling deposition testimony presents starkly different accounts of Mr. Eckhaus's actions, with defendants insisting that he repeatedly advanced toward Yaakov, and Mr. Eckhaus insisting that he did not approach the struggle. (Officer Lemmon's bodycam offers no clarity, as it was knocked to the ground prior to this portion of the incident.) Drawing inferences in plaintiffs' favor, as I must, I conclude that there is a factual dispute as to what happened after Mr. Eckhaus offered to sedate his son.

However, the facts are clearer regarding Mr. Eckhaus's initial intervention in his son's arrest. Defendants claim that Mr. Eckhaus grabbed his son's ankle and tried to pull him away from the officers surrounding him. Officer Lemmon's bodycam footage does capture this part of the incident, and defendants claim the video supports their account. Having viewed the footage multiple times, I agree. The footage depicts several officers surrounding Yaakov, who is flailing

8

on the ground, partially handcuffed, and screaming. Bodycam Video 1:28–2:02. As the officers continue to fight to subdue Yaakov, his father enters the picture. *Id.* at 2:02. Mr. Eckhaus walks over to the crowd surrounding Yaakov and joins the fray briefly, for all of three to four seconds. The video depicts Mr. Eckhaus gripping Yaakov's ankle with both hands. *Id.* at 2:05. Officer Lemmon responds to this intrusion by grabbing Mr. Eckhaus's arms and pulling them away, while yelling "move back, sir, move back." *Id.* at 2:03–2:06. Mr. Eckhaus then releases the ankle and moves back as instructed. *Id.* at 2:06.

Mr. Eckhaus offers an alternative to the bodycam footage, claiming that he merely touched Yaakov's ankle and told him not to fight to officers. Pl.'s 56.1 ¶ 14. He supports this assertion by citing the bodycam video as well as his deposition, in which he stated, "I may have touched his feet because that was the only thing closest to me and I was trying to get his attention, maybe to tell him to listen, if at all, but no way did I ever get in between the officers and him." Pl.'s Ex. A ("Eckhaus Dep.") 59:7–59:10, ECF No. 74-1; *see also id.* at 59:13–16 ("I don't know if I grabbed him. I may have tried to get his attention by touching his feet. I don't recall. . . . I definitely wasn't grabbing, if you want to call it grabbing.") Though I must view the evidence in the light most favorable to Mr. Eckhaus and must draw all reasonable inferences in his favor, his testimony is belied by the video itself, which shows him grabbing Yaakov's ankle with two hands before getting pushed away by Officer Lemmon.

In sum, I find that defendants met their burden of demonstrating there is no genuine dispute of material fact as to Mr. Eckhaus's initial intervention in Yaakov's arrest. I also find that Mr. Eckhaus has failed to respond with specific evidence demonstrating the existence of a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmovant "must do more than simply show that there is some

9

metaphysical doubt as to the material facts"). Thus, I conclude that no reasonable jury could find that Mr. Eckhaus was not grabbing Yaakov's ankle during Yaakov's arrest.

### D. The Existence of Arguable Probable Cause.

The next question, then, is whether Mr. Eckhaus's actions provided probable cause for his arrest. Courts in the Second Circuit have found that officers had at least arguable probable cause to arrest individuals for obstructing governmental administration where they physically "broke away" from an officer and approached a rescue worker, *Decker v. Campus*, 981 F. Supp. 851, 858 (S.D.N.Y. 1997), and where they approached police officers struggling with a suspect who they thought was reaching for a gun, *Husbands ex rel. Forde v. City of New York*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *13 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 335 F. App'x 124 (2d Cir. 2009). Looking at the totality of the circumstances surrounding the arrest in this case, I conclude that reasonable officers could at least debate whether there was probable cause to arrest Mr. Eckhaus for obstructing governmental administration in violation of New York Penal Law § 195.05. That is, a reasonable officer who observed Mr. Eckhaus grab Yaakov's ankle could infer that Mr. Eckhaus intended to interfere with the arrest of his son.[3] Thus, I hold that Officer Lemmon is entitled to qualified immunity for the false arrest claim. *See Kass*, 864 F.3d at 210. Given this conclusion, I need not reach the question of whether Officer Lemmon—the only officer specifically named in this suit—was sufficiently involved in Mr. Eckhaus's arrest to be liable on the false arrest cause of action.

---

[3] I need not decide whether Mr. Eckhaus actually had the requisite intent to violate the statute because I hold that it was reasonable for Officer Lemmon to believe that Mr. Eckhaus intended to obstruct governmental administration. *Decker*, 981 F. Supp. at 858 n.3.

### II. Summary Judgment is Granted on the Excessive Force Claim.

Plaintiff's next federal claim alleges use of excessive force in violation of the Fourth Amendment. "It is well-settled that the right to make a lawful arrest carries with it the right to use reasonable force to effectuate that arrest." *Rizk*, 462 F. Supp. 3d at 222 (quotation and alteration omitted). Whether force used in the course of an arrest is excessive depends on "an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). Even if an individual is resisting arrest, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.* at 165–66.

Defendants argue that summary judgment is justified on the excessive force claim because it is undisputed that Officer Lemmon did not use any force against Mr. Eckhaus and photographs of Mr. Eckhaus taken after the fact are inconsistent with his excessive force claims. Mr. Eckhaus responds that summary judgment is inappropriate because a reasonable jury could conclude that Officer Lemmon used excessive force against him.

To start, I reject defendants' argument that I should grant summary judgment because "photos of [p]laintiff taken shortly after his arrest directly contradict his allegations that an officer pepper sprayed his eyes and slammed his face into the ground." Defs.' Mot. 15. First, defendants' own undisputed statement of material facts state that an officer pepper sprayed Mr. Eckhaus's eyes and slammed his face into the ground. Defs.' 56.1 ¶ 35. Second, Mr. Eckhaus submitted medical records supporting his assertion that he suffered traumatic eye injury as a result of the use of force. *See* Pl.'s Opp'n, Ex. F, ECF No. 74-6. Third, even if he had not submitted such records, it is far

11

from clear that the success of an excessive force claim depends on severity of injury. *See Rizk*, 462 F. Supp. 3d at 223 ("Many circuit courts have expressly rejected the view that Fourth Amendment excessive force cases can be dismissed because the injury was only de minimis."). According to the uncontroverted facts accompanying the present motion, an officer used force against Mr. Eckhaus, and that force appears to have been excessive.

However, there is also uncontroverted evidence that Officer Lemmon herself did not use any force against Mr. Eckhaus, *see* Pl.'s 56.1 ¶ 35, and any claim otherwise is conclusory and unsupported by the record. Thus, even viewing the evidence in the light most favorable to plaintiff, a reasonable jury could not find that Officer Lemmon used excessive force against Mr. Eckhaus. I therefore grant summary judgment on the excessive force claim in favor of Officer Lemmon. *See Rizk*, 462 F. Supp. 3d at 222 (dismissing certain excessive force claims where there was no evidence the defendants used force against the plaintiffs).

### III.     Summary Judgment is Granted on the Failure to Intervene Claim.

Plaintiff's final federal claim alleges failure to intervene in violation of the Fourth Amendment. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019) (quotation omitted). An officer may be liable for preventable harm caused by a failure to intervene in the actions of other officers if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). Mere presence at the scene of an incident is insufficient to establish that an officer had an opportunity to prevent

the use of excessive force. *Corley v. Shahid*, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015). Whether an officer "had a realistic opportunity to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) (quotation omitted).

Defendants argue that summary judgment is appropriate on the failure to intervene claim because Officer Lemmon did not observe any other officer arrest or use force against Mr. Eckhaus. Plaintiff responds that there is a genuine issue of material fact as to whether Officer Lemmon knew Mr. Eckhaus was being arrested and whether she should have known that he would be subject to excessive force after being taken outside.

I do not credit defendants' assertion that Officer Lemmon undisputedly did not know that Mr. Eckhaus was placed under arrest in his house. Given Officer Lemmon's presence in the room in which Mr. Eckhaus was arrested, a reasonable juror could infer that she was aware of the arrest. However, Officer Lemmon testified in her deposition that she did not see Mr. Eckhaus while he was outside the apartment, a statement not meaningfully countered. Defs.' 56.1 ¶ 39; Pl.'s 56.1 ¶ 39. Mr. Eckhaus also does not dispute that he did not see any officers who had been inside the house when he was outside, besides those who escorted him outside. Pl.'s 56.1 ¶ 40. Thus, there is no genuine dispute that Officer Lemmon did not observe the use of force against Mr. Eckhaus. As a result, no reasonable jury could conclude that Officer Lemmon had a realistic opportunity to intervene on Mr. Eckhaus's behalf. *See Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016).

## IV.    Mr. Eckhaus's State Law Claims Are Dismissed.

Having found that summary judgment is appropriate on plaintiff's federal law claims, I decline to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Generally, where "a plaintiff's federal claims are dismissed before trial, the state claims should be

13

dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quotation omitted). This case is not on the eve of trial, and I see no reason to depart from standard practice, and Mr. Eckhaus has not articulated any reason I should do so.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted on the § 1983 false arrest, excessive force, and failure to intervene claims; summary judgment is granted as unopposed on the negligent and intentional infliction of emotional distress claims; the NYPD and the John Doe defendants are dismissed; and I decline to exercise supplemental jurisdiction over the remaining state-law claims. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

                                                                                       /s/
                                                                  Allyne R. Ross
                                                                  United States District Judge

Dated:       May 1, 2023
                Brooklyn, New York